1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER L. MOLANO, | 1:09cv0639 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Christopher L. Molano ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his applications on December 5, 2006, alleging disability since January 19, 2006, due to degenerative spine disease, nerve damage and numbness. AR 98-101, 104-106,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

128-135.  After his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 46-47, 55, 62, 77.  ALJ Michael J. Haubner held a hearing on November 4, 2008, and denied benefits on April 24, 2009.  AR 10-21, 22-45.  The Appeals Council denied review on June 9, 2009.  AR 5-7.

Hearing Testimony

ALJ Haubner held a hearing on November 4, 2008, in Fresno, California.  Plaintiff appeared with his attorney, Melissa Proudian.  Vocational expert ("VE") Thomas Dachelet also appeared and testified.  AR 22.

Plaintiff testified that he was born in 1972 and received a high school diploma.  AR 27. He worked making and installing signs in 1999 and 2000, and worked in concrete in 2001.  AR 27-28.  He lives with his wife, five children and one grandchild.  AR 32.  He has a driver's license, but has only driven three times in the last six months.  AR 32-33.

Plaintiff is compliant with his treatment, but still has pain in his neck all the way down to his feet.  He rates his pain as an 8 out of 10.  He also has about the same level of pain in each leg and rated it as a 6 out of 10.  AR 28-29.  Plaintiff has constant numbness and tingling in his fourth and pinky fingers on his right hand.  This affects his ability to grasp things and get a secure hold.  He thought he could hold a coffee cup with his right hand for about two minutes and would then need to rest his hand for an hour to an hour and a half.  AR 29-30.  Plaintiff thought that he could stand for about 10 minutes and sit for 15 to 20 minutes.  He could walk about 30 feet.  AR 30-31.  Plaintiff thought he could lift about five pounds and could hold his head straight for about 10 to 15 minutes.  AR 38.

Plaintiff explained that he has to lay down during the day for about four hours.  He has difficulty concentrating because of pain and thought he could focus for about 30 to 45 minutes. AR 31.  Plaintiff is able to care for himself and feed himself, though he needs help showering about once a week.  AR 34.  He does not cook but can prepare simple meals once a day.  AR 34. He does not do dishes and does not shop for groceries.  Plaintiff is able to attend church once a week.  AR 35.  Plaintiff waters the yard once a week and visits with friends once a month.  AR 35-36.  He does not take out the trash or do laundry.  AR 37.

1    During the day, Plaintiff estimated that he spends about four hours watching television
2    and about 20 minutes reading the newspaper.  He does not attend his children's school functions
3    and does not help them with homework.  AR 37.

4    For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,
5    education, language and background.  This person could stand/walk no more than six hours out
6    of an eight hour day, and lift no more than 50 pounds occasionally, 25 pounds frequently.  This
7    person could not perform Plaintiff's past work but could perform the full world of unskilled
8    sedentary, light and medium work.  AR 41.

9    For the second hypothetical, the ALJ asked the VE to assume that this person could lift
10   and carry 50 pounds occasionally, 25 pounds frequently, stand and walk about six hours and sit
11   about six hours.  This person could push and pull without limitation, kneel occasionally and
12   climb, balance, stoop, crouch and crawl frequently.  The VE testified that this person could not
13   perform Plaintiff's past work but could perform the full world of unskilled sedentary, light and
14   medium work.  AR 41-42.

15   For the third hypothetical, the ALJ asked the VE to assume that this person could lift,
16   push and pull no more than 20 pounds, could not perform repetitive movement of the back, and
17   could not perform repetitive bending or stooping.  The VE testified that this person could not
18   perform Plaintiff's past work, though he could not answer the question as to other work because
19   the back limitation was too nebulous.  AR 42.

20   For the fourth hypothetical, the ALJ asked the VE to assume that this person could not
21   lift, push or pull more than five pounds on an occasional basis and could not climb ladders.  This
22   person could climb stairs occasionally, stand for 10 out of 60 minutes, walk for 15 out of 60
23   minutes and sit for 30 out of 60 minutes.  This person would also need to alternate sitting,
24   standing or walking, and could not bend or stoop more than three times per hour.  The VE
25   testified that this person could not work.  AR 42-43.

26   For the fifth hypothetical, the ALJ asked the VE to assume a person with the limitations
27   in Plaintiff's testimony.  The VE testified that this person could not perform any work.  AR 43.

28

1    Medical Record

2    January 16, 2006, x-rays of Plaintiff's lumbosacral spine revealed severe degenerative

3    change at the L5-S1 level.  AR 163.

4    A February 16, 2006, MRI of Plaintiff's lumbar spine revealed L5-S1 broad-based disc

5    bulge with central protrusion, annual tear without definitive nerve contact, bilateral moderate

6    neural foraminal narrowing at L5-S1 due to far lateral disc, focal endplate degenerative changes

7    at L5-S1, and mild L5-S1 facet joint hypertrophy.  AR 162.

8    On May 8, 2006, Plaintiff saw Mythili Sundaresan, M.D., for low back pain with

9    radiation down to his heels for the past five years.  His pain occurs throughout the day and is

10   more in the left leg than right.  Plaintiff reported that if he stands on his heel, he has pain going

11   from the back to the left gluteal region.  On examination, Plaintiff was well-built and was not in

12   distress.  His cranial nerves were within normal limits.  Power, tone, coordination and deep

13   tendon reflexes in the upper and lower extremities were also within normal limits.  Sensory

14   modalities showed impaired pinprick throughout the right arm and right leg, reduced vibratory

15   sensation distally in his legs, right more than left, and distally in his hands, right more than left.

16   Dr. Sundarensan diagnosed cervical and lumbosacral radiculoneuropathy, and degenerative

17   cervical and lumbosacral disc disease with radiculoneuropathy.  AR 179-180.

18   X-rays of Plaintiff's cervical spine taken on May 11, 2006, were normal.  AR 173.

19   On June 16, 2006, Plaintiff saw Dr. Sundaresan in follow-up.  Plaintiff's main problem

20   was back pain with radiating pain down his legs.  He also complained of numbness in the left leg

21   and both hands, right more than left.  Plaintiff complained of neck pain with pain shooting down

22   both arms.  EMG/NCV studies of the lower extremities showed findings consistent with bilateral

23   L5, S1 root lesion or mononeuropathy of the lower extremities.  The upper extremities show

24   extensive axonal type of neuropathy consistent with radiculoneuropathy or brachial plexopathy.

25   Dr. Sundaresan diagnosed cervical and lumbosacral radiculoneuropathy with degenerative disc

26   disease and spondylosis.  He recommended that Plaintiff see a neurosurgeon and believed that if

27   he was not a surgical candidate, he would need a spinal tap.  AR 174.

28

4

1    On June 28, 2006, Plaintiff began treating with Sanjay J. Chauhan, M.D.  Plaintiff

2    reported pain on the right side of his lower back with radiation to the right posterior thigh.  He

3    denied any numbness or tingling and stated that the pain was eased by taking medication or

4    resting.  He also complained of right hip pain.  On examination, muscle strength was 5 out of 5 in

5    both lower extremities.  Muscle tone was normal and no focal atrophy was noted.  Reflexes and

6    sensation to light touch was normal.  Plaintiff's gait was normal.  There was slight to moderate

7    paralumbar muscle spasm on the left and mild spasm on the right.  Range of motion in the

8    lumbar spine was limited and straight leg raising was positive on the left at 75 degrees in a sitting

9    and supine position.  It was negative on the right.  Back flexion was 90 percent of normal.  He

10   had tenderness of the lateral greater trochanteric area with mildly positive Patrick's test on the

11   right.  Range of motion in the hips was normal.  Dr. Chauhan diagnosed right lumbar strain, right

12   hip strain and left-sided lower back strain with left lumbar radiculopathy.  He opined that

13   Plaintiff could do modified work, with a restriction of no lifting, pushing or pulling more than 20

14   pounds, no repetitive movements of the back and no repetitive bending or stooping.  Dr. Chauhan

15   prescribed ibuprofen 800 mg. for pain/inflammation and Soma for muscle spasm.  AR 336-341.

16   An MRI of Plaintiff's cervical spine performed on July 24, 2006, was normal.  AR 181.

17   Plaintiff underwent a CT scan of his pelvis for abdominal pain on November 26, 2006.

18   "Incidental note" was made of advanced degenerative disc space narrowing at L5-S1 with

19   posterior disc bulge and mild marginal spurring.  AR 193.

20   On March 3, 2007, Plaintiff saw Juliane Tran, M.D., for a consultive examination.

21   Plaintiff reported back pain with radiation to both legs, and neck pain with radiation to the right

22   shoulder, right arm and right first through third fingers.  Plaintiff also reported numbness in his

23   left leg and in the sole of his left foot.  Plaintiff ambulated with a normal gait though he seemed

24   to exhibit "painful behavior."  His general mobility was mildly slow but "seemed to be

25   comfortable."  Plaintiff tolerated sitting and could take his shoes on and off.  Effort seemed to be

26   associated with painful behavior.  Plaintiff was able to perform toe, heel and tandem walking,

27   though he exhibited painful behavior.  Pulses were intact bilaterally.  Range of motion testing in

28   his neck produced complaints of pain and range of motion testing in his back was limited by

1  pain.  There was painful behavior during lumbar range of motion for flexion and extension.

2  Plaintiff also complained of back pain during forward flexion of his hips.  Straight leg raising on

3  the right was negative and on the left, testing produced back pain without radicular symptoms.

4  Plaintiff had tenderness of palpation over the cervical spine, diffusely along the right and left

5  lower lumbar spine, diffusely over the thoracic spine and along the right and left sacroiliac joints,

6  sacroiliac notches and bilateral gluteal regions.  Plaintiff exhibited painful behavior during the

7  palpation exam.  Muscle strength was 5 out of 5 throughout and grasping strength was 5 out of 5

8  bilaterally.  Plaintiff had decreased sensation in the right and left L4-L5 dermatome to pinprick.

9  Sensation was decreased in all fingers of the left hand and decreased in all fingers of the right

10  hand and right forearm, though not in a specified dermatomal pattern.  AR 195-198.

11  Dr. Tran diagnosed neck pain, probably cervical strain or strain, and back pain, probably

12  lumbosacral sprain or strain.  Plaintiff had a subjective radicular symptom to the right and left

13  lower extremity, but his reflex examination was normal and straight leg raising was negative.

14  Plaintiff demonstrated painful behavior during the examination and despite restricted range of

15  motion, there was no evidence of an active lumbar radiculopathy and no obvious evidence of

16  sacroiliac joint pain.  There was a component of low pain threshold.  AR 198.  Dr. Tran opined

17  that Plaintiff could not stand or walk more than six hours and could lift 50 pounds occasionally,

18  25 pounds frequently.  AR 198-199.

19  Plaintiff returned to Dr. Sundaresan on March 5, 2007.  He reported that his pain was

20  more on the left and had been for two years prior to first being seen in 2006.  Dr. Sundaresan

21  noted that the February 2006 MRI showed outlet stenosis at L5, S1.  Dr. Sundaresan

22  recommended that Plaintiff see a neurosurgeon.  AR 201.

23  A March 19, 2007, MRI of Plaintiff's lumbar spine showed L5-S1 bilateral foraminal

24  stenosis, unchanged from the prior exam, and associated degenerative disc changes at L5-S1.

25  Broad-based central disc displacement did not produce significant central stenosis.  AR 321-322.

26  Plaintiff returned to Dr. Chauhan on March 27, 2007.  He reported pain on the right side

27  with radiation to the right posterior thigh.  On examination, strength in the left lower extremity

28

was 4 out of 5 due to back pain.  Strength in the right lower extremity was 5 out of 5.  Plaintiff's gait was slow because of pain.  Back flexion was 70 percent of normal.  AR 316-320.

On April 17, 2007, State Agency physician B. J. Ginsburg completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, stand and/or walk for six hours and sit for six hours.  Plaintiff could occasionally stoop and could frequently climb, balance, stoop, kneel, crouch and crawl.  AR 202-206.  This opinion was affirmed on July 31, 2007.  AR 220.

Plaintiff returned to Dr. Chauhan on May 17, 2007.  He reported that his lower back pain radiated to his lower extremities, mostly on the right.  He also reported right hip pain.  On examination, Plaintiff's left lower extremity was weaker due to back pain.  Straight leg raising was now positive on the right and negative on the left.  Back flexion was 70 percent of normal.  AR 310-314.

On May 18, 2007, Plaintiff saw Adam J. Brant, M.D., for a surgical consult.  Plaintiff reported that his back pain has become progressively worse since being hit by a forklift at work in January 2006.  Eighty percent of his pain was concentrated in the midline of the lumbosacral region and twenty percent was concentrated in his bilateral buttocks and posterior thighs, calves and the plantar surfaces of both feet.  He rated his pain at a 9 out of 10 throughout the day and reported that his symptoms worsened with prolonged standing, walking or bending.  Plaintiff also reported occasional numbness and tingling in his buttocks and legs in the same distribution as his pain.  AR 209-210.  On examination, motor strength was 5 out of 5 with no atrophy noted.  Sensory examination was normal.  Plaintiff was able to heel and toe walk without difficulty and could rise from a squatting position without assistance, but with significant discomfort.  Cervical range of motion was normal, but lumbar range of motion was markedly limited in all planes due to discomfort.  Straight leg testing was positive bilaterally at 30 degrees and there was marked tightness of the right hamstring, which limited full extension at the knee.  AR 210-211.

Dr. Brandt reviewed the  March 2007 MRI and May 2007 x-rays.  He diagnosed Plaintiff with advanced L5-S1 degenerative disc disease and bilateral L5 foraminal stenosis.  Dr. Brant noted that his symptoms were well explained by his impairments.  Dr. Brant believed that surgery

1   had an 80 percent chance of success, though Plaintiff would have to quit smoking for optimal

2   results.  Plaintiff wanted to undergo surgery and Dr. Brant indicated that he would see Plaintiff

3   again once he receives authorization and sets a surgery date.  AR 212.

4          Treatment notes from Community Medical Imaging Radiologists dated June 15, 2007,

5   reveal that Plaintiff was unable to quit smoking and suggest that a surgery for which he did not

6   have to quit smoking be explored.  AR 213.

7          On October 8, 2007, Plaintiff saw Steven D. Feinberg, M.D., for an Agreed Medical

8   Evaluation.  Plaintiff complained of a constant aching, stabbing pain in the right side of the lower

9   back with radiation down the right leg to the bottom of the foot.  He rated his pain as an 8.  On

10  examination, Plaintiff displayed mild pain behavior with moving about slowly and moaning.  He

11  had no lower body muscular atrophy.  Plaintiff "severely self-limit[ed]" lumbar flexibility to 25

12  percent or less, all with discomfort, and he had diffuse and nonspecific lumbar palpatory

13  discomfort.  His range of motion appeared "much better than he show[ed]" because he had no

14  trouble with straight leg raising in the sitting position.  Plaintiff's gait was normal, sensation was

15  intact and strength was normal in the lower body.  Dr. Feinberg diagnosed significant L5-S1

16  lumbar spondylosis and significant chronic pain syndrome.  Plaintiff's psychological profile was

17  "worrisome."  AR 225-236.

18         Given the nature of his presentation, Dr. Feinberg conducted a Pain Assessment Battery.

19  Plaintiff produced a valid and clinically interpretable profile and the results suggest that

20  psychological variables may be affecting his experience of pain and treatment response to a

21  severe to extreme degree.  Dr. Feinberg believed that the probability of a successful outcome

22  from medical treatment, from a psychological perspective, was rated as a 1 on a 5 point scale.

23  Plaintiff was considered a below-average candidate for traditional medical treatment for pain and

24  surgery was not recommended.  Instead, Dr. Feinberg recommended that Plaintiff undergo a

25  formal pain psychological assessment as part of a multidisciplinary approach to his problem.  AR

26  236-237.

27         Plaintiff underwent a psychological pain assessment on October 8, 2007.  The results of

28  the three tests administered showed scores within the valid range and Plaintiff produced a valid

and clinically interpretable profile.  The results suggested that psychological variables may be affecting Plaintiff's experience of pain and treatment response to a severe to extreme degree.  Of particular concern are Plaintiff's symptoms of depression, anxiety and somatic distress.  Monica Feinberg-Gizzo, Ph.D., opined that Plaintiff may benefit from a multidisciplinary pain program with an emphasis on coordinating physical and psychological evaluation.  She also recommended mental health treatment because of the severity and breadth of Plaintiff's psychological symptoms.  AR 239-242.

Plaintiff returned to Dr. Chauhan on October 30, 2007.  Gait was slow with flexed posture and a limp.  Motor strength was 4 out of 5 in the left lower extremity due to lower back pain and was 5 out of 5 in the right lower extremity.  He had tenderness in the trochanteric area and range of motion in his lumbar spine was limited.  Straight leg raising was positive in the right at 65 degrees in a sitting position, but negative on the left.  There was slight to moderate paralumbar muscle spasm on the left and mild spasm on the right.  Back flexion was 50 percent of normal.  Dr. Chauhan requested that surgery be authorized pursuant to Dr. Brandt's recommendation.  AR 294-298.

Plaintiff returned to Dr. Chauhan on March 18, 2008.  Plaintiff felt that his pain had increased overall because of the delay in getting treatment authorized.  His examination was unchanged.  AR 277-281.

Plaintiff saw Dr. Chauhan on April 30, 2008.  Plaintiff laid on the examination table due to pain and limped because of low back pain.  His examination was unchanged.  AR 268-273.

On June 19, 2008, Plaintiff saw Todd F. Alamin, M.D., at the Spine Surgery Clinic at Stanford Hospital for a second opinion.  Plaintiff reported that he injured his lower back in work-related accident in February 2006, and that he has pain essentially from the top of his head to the bottom of his feet.  Plaintiff further reported that he had lower back pain in the left side of his back for five years prior to the accident.  Plaintiff rated his back pain at a 10, his right leg pain at a 7 and his left leg pain at a 6.  Any movement aggravates the pain and nothing can alleviate it.  AR 221.

On examination, Plaintiff appeared to be in some distress and essentially every maneuver aggravated his pain, which started from the neck and radiated all the way down to his feet. Palpation of his lumbar, thoracic and cervical spine was very painful, as was gentle compression of his head.  Rotation of the spine, heel-toe walking, hip examination and straight leg raising all caused pain.  To manual testing, he appeared to have intact strength of 5 out of 5 in both legs. Dr. Alamin reviewed Plaintiff's MRIs, which he opined did not show any evidence of nerve root compression, spinal stenosis or spinal cord change.  Plaintiff's x-rays showed a degenerative disc at L5-S1, though the disc is structurally stable.  AR 222.

Dr. Alamin did not believe that Plaintiff was a good candidate for lumbar fusion because he had no structural instability.  In fact, surgery could further harm him.  Plaintiff had pain "essentially throughout his body and exaggerated pain behavior."  Dr. Alamin believed that Plaintiff's should be involved in a "dedicated functional restoration program."  AR 223.

Plaintiff saw Dr. Chauhan again on June 24, 2008.  After examination, he opined that Plaintiff was not permanent and stationary.  Plaintiff's medication was changed from Percocet to Oxycontin and he was instructed to continue all other medications.  Dr. Chauhan requested authorization of a TENS unit and an adjustable walking cane.  AR 258-262

On August 19, 2008, Plaintiff returned to Dr. Chauhan.  Plaintiff was authorized to use crutches instead of the cane originally requested.  Plaintiff complained of low back pain with radiation to the lower extremities, mostly to the right.  He also complained of right hip pain, neck pain and depression.  On examination, his mood and affect were depressed.  Strength in the lower left extremity was 4 out of 5 due to lower back pain.  Strength in the right lower extremity was normal at 5 out of 5.  Plaintiff's gait was slow with flexed forward posture due to low back pain.  Plaintiff limped on the right leg.  He had tenderness of the lateral greater trochanteric area with mildly positive Patrick's test on the right.  Range of motion of the hips was normal.  There was slight to moderate paralumbar muscle spasm on the left and mild muscle spasm on the right. Range of motion of the lumbar spine was limited and straight leg raising was positive to the right, negative to the left.  Back flexion was 60 percent of normal.  AR 248-250.

Dr. Chauhan diagnosed right lumbar strain with right hip strain due to the injury in January 2006, left-sided lower back strain with left lumbar radiculopathy, due to continuous trauma to January 2006 injury, secondary depression and insomnia due to chronic pain.  Dr. Chauhan opined that Plaintiff was permanent and stationary.  He could not lift, push or pull more than 5 pounds occasionally, could not climb ladders, could not stand for more than 10 out of 60 minutes, could not walk for more than 15 out of 60 minutes and could not sit for more than 30 out of 60 minutes.  Plaintiff could climb stairs occasionally and would need a sit/stand option. Plaintiff could not bend or stoop more than three times per hour.  Dr. Chauhan requested that a pain management consultation and a psychological consultation be authorized.  He instructed Plaintiff to continue Oxycontin, ibuprofin 800 mg., Tylenol #3 and Ambien.  Dr. Chauhan also instructed Plaintiff to use the TENS unit as directed and requested an adjustable walking cane be authorized.  AR 250-255.

On October 31, 2008, Dr. Feinberg re-examined Plaintiff.  He also reviewed all treatment records, including those from Dr. Chauhan's August 2008 examination.  On examination, there was no lower body muscular atrophy and Plaintiff self-limited lumbar flexibility to 50 to 75 percent of expected.  Plaintiff had diffuse and nonspecific lumbar palpatory discomfort.  Straight leg raising was negative and his gait was normal.  Strength was normal in the lower body.  Dr. Feinberg diagnosed L5-S1 lumbar spondylosis and chronic pain syndrome.  He stated that Plaintiff "has known and significant L5-S1 lumbar spondylosis, but also shows evidence of a significant chronic pain syndrome."  He believed that Plaintiff's previous psychological profile is "worrisome."  Plaintiff's lower body neurologic examination was objectively normal and Plaintiff has had nothing but passive-type therapies.  There is nothing to suggest that Plaintiff has had a functional restoration approach to his problem, which was recommended previously. Spinal surgery was not indicated.  AR 343-349.

Dr. Feinberg did not believe that Plaintiff was permanent and stationary and suggested that he undergo a formal pain psychological assessment as part of a multidisciplinary pain evaluation and then be provided a functional restoration approach to his problem.  AR 349-350.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of L5-S1 lumbar degenerative disc disease, bulging, endplate degenerative changes with bilateral foraminal stenosis but without significant central stenosis, and mononeuropathy.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift 50 pounds occasionally, 25 pounds frequently, sit, stand or walk for six hours and stoop occasionally.  Based on this RFC, the ALJ determined that Plaintiff could not perform his past work but could perform a significant number of jobs in the national economy.  AR 15-20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42

1  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

2  such severity that he is not only unable to do her previous work, but cannot, considering his age,

3  education, and work experience, engage in any other kind of substantial gainful work which

4  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

5  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

6  Cir. 1990).

7          In an effort to achieve uniformity of decisions, the Commissioner has promulgated

8  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

9  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2]  Applying this process in this case, the ALJ

10 found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

11 his disability; (2) has an impairment or a combination of impairments that is considered "severe"

12 (L5-S1 lumbar degenerative disc disease, bulging, endplate degenerative changes with bilateral

13 foraminal stenosis but without significant central stenosis, and mononeuropathy) based on the

14 requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or

15 combination of impairments which meets or equals one of the impairments set forth in Appendix

16 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the

17 RFC to perform a significant number of jobs.  AR 15-20.

18         Here, Plaintiff argues that the ALJ (1) erred in rejecting the opinion of his treating source,

19 Dr. Chauhan; and (2) erred in finding him not credible.

20                                              **DISCUSSION**

21 A.      Dr. Chauhan's Opinion

22         Plaintiff first contends that the ALJ erred in rejecting the opinion of his treating

23 physician, Dr. Chauhan.  In August 2008, Dr. Chauhan examined Plaintiff and opined that he had

24 severe limitations.  AR 250-255.

25         The opinions of treating doctors should be given more weight than the opinions of

26 doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998);

27

28         [2]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1   _Lester v. Chater_, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not

2   contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

3   supported by substantial evidence in the record.  _Lester_, 81 F.3d at 830.  Even if the treating

4   doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without

5   providing "specific and legitimate reasons" supported by substantial evidence in the record.  _Id._

6   (quoting _Murray v. Heckler_, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out

7   a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

8   interpretation thereof, and making findings.  _Magallanes  v. Bowen_, 881 F.2d 747, 751 (9th

9   Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own

10  interpretations and explain why they, rather than the doctors', are correct.  _Embrey v. Bowen_, 849

11  F.2d 418, 421-22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given

12  controlling weight if it is well-supported and not inconsistent with the other substantial evidence

13  in the record.  _Lingenfelter v. Astrue_, 504 F.3d 1028 (9th Cir. 2007).

14          In _Orn v. Astrue,_ 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and

15  expounded upon its position regarding the ALJ's acceptance of the opinion an examining

16  physician over that of a treating physician.  "When an examining physician relies on the same

17  clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions

18  of the examining physician are not "'substantial evidence."'  _Orn,_ 495 F.3d at 632; _Murray_, 722

19  F.2d at 501-502.  "By contrast, when an examining physician provides 'independent clinical

20  findings that differ from the findings of the treating physicians, such findings are 'substantial

21  evidence.'"  _Orn_, 496 F.3d at 632; _Miller v. Heckler_, 770 F.2d 845, 849 (9th Cir.1985).

22  Independent clinical findings can be either (1) diagnoses that differ from those offered by another

23  physician and that are supported by substantial evidence, _see_ _Allen v. Heckler_, 749 F.2d 577, 579

24  (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not

25  herself considered, _see_ _Andrews_, 53 F.3d at 1041.

26          If a treating physician's opinion is not giving controlling weight because it is not well

27  supported or because it is inconsistent with other substantial evidence in the record, the ALJ is

28  instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6)

1    in determining what weight to accord the opinion of the treating physician.  Those factors include

2    the "[l]ength of the treatment relationship and the frequency of examination" by the treating

3    physician; and the "nature and extent of the treatment relationship" between the patient and the

4    treating physician.  20 C.F.R. 404.1527(d)(2)(i)-(ii).  Other factors include the supportablility of

5    the opinion, consistency with the record as a whole, the specialization of the physician, and the

6    extent to which the physician is familiar with disability programs and evidentiary requirements.

7    20 C.F.R. § 404.1527(d)(3)-(6).   Even when contradicted by an opinion of an examining

8    physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to

9    deference."  SSR 96-2p; _Orn_, 495 F.3d at 632-633.  "In many cases, a treating source's medical

10   opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the

11   test for controlling weight."  SSR 96-2p; _Orn_, 495 F.3d at 633.

12        Here, the ALJ accepted the opinion of Dr. Tran, the consultive examiner, as modified by

13   the State Agency physician, over that of Dr. Chauhan.  He was therefore required to set forth

14   "specific and legitimate reasons" supported by substantial evidence in the record.  _Lester_, 81 F.3d

15   at 830.

16        The ALJ first explained that Dr. Chauhan "did not have the opportunity to review the

17   university level report by Dr. Alamin."  AR 19.  The ALJ did not elaborate as to why he felt this

18   was noteworthy, though his lack of explanation is not relevant because his statement is incorrect.

19   In his August 2008 report, Dr. Chauhan opined that surgical treatment should be allowed

20   pursuant to Dr. Brandt's recommendation.  AR 253.  He then stated, "Dr. Alamin, Neurosurgeon

21   at Stanford, did not feel that the surgery was indicated at this time, but felt that surgery should be

22   left open as part of future medical care."  AR 253.

23        The ALJ next explained that Dr. Chauhan did not give any reason for the change from his

24   June 2006 opinion, when he opined that Plaintiff could do modified work, with no lifting,

25   pushing or pulling more than 20 pounds, no repetitive movements of the back and no repetitive

26   bending or stooping.  AR 336-341.  By August 2008, Dr. Chauhan believed that Plaintiff could

27   not lift, push or pull more than 5 pounds occasionally, could not climb ladders, could not stand

28   for more than 10 minutes per hour, could not walk for more than 15 minutes per hour, could not

sit for more than 30 minutes at a time and could not bend or stoop more than three times per hour.  AR 250-255.  In 2008, Plaintiff's gait was slower with a flexed forward posture and strength in his left leg had decreased from 5 out of 5 to 4 out of 5.  It is unclear, however, whether these differences would support such a drastic decrease in Plaintiff's abilities and Dr. Chauhan does not explain his rationale.  An ALJ can reject a treating physician's opinion based on inconsistencies in his reports.  *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

The ALJ also explained that Dr. Chauhan's objective findings differed from those of other physicians.  For example, other physicians "did not find the muscle weakness, the positive straight leg raising or the altered gait observed by Dr. Chauhan."  AR 19.  Although at least one other physician found positive straight leg raising, none found muscle weakness or altered gait.  Indeed, just two months after Dr. Chauhan's August 2008 examination, Dr. Feinberg examined Plaintiff and found that straight leg raising was negative, gait was normal and strength was normal in the lower body.  AR 343-349.  As decreased muscle strength and altered gait were the main differences between the 2006 and 2008 examinations, the ALJ correctly noted these inconsistencies.  *See* 20 C.F.R. § 404.1527(d)(4).

Finally, the ALJ explained that "Dr. Chauhan does not note nor discuss the exaggerated pain behavior pointed out by Drs. Feinberg, Alamin and Tran."  AR 19.  Dr. Chauhan's failure to discuss this behavior, which was pointed out repeatedly by various physicians, renders his opinion incomplete and inconsistent with a substantial portion of the medical record.

Plaintiff argues that the ALJ "grossly mischaracterized" the opinions of Dr. Feinberg and Dr. Alamin because they did not find that Plaintiff was malingering.  Opening Brief, at 10.  Citing the Mayo Clinic's website, Plaintiff argues that exaggerated pain behavior is a "term of art" used to describe the brain's exaggerated response to a stimuli that should not cause pain or cause only a small amount of pain.  Opening Brief, at 6.  While this may be true, neither Dr. Feinberg nor Dr. Alamin explained how this pain behavior affects Plaintiff's functional capacity.  Although Dr. Chauhan offered a functional assessment, his opinion could be given less weight because he failed to address the issue.

Dr. Tran, on the other hand, found pain behavior but nonetheless determined that Plaintiff could perform medium work.  "[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinion of examining source constituted "specific and legitimate reason" for rejecting opinion of a treating source); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

Dr. Tran's opinion was also supported by State Agency physicians Ginsburg and Wong. AR 19, 202-206, 219-220.  *Thomas v. Barhart*, 278 F.3d 947, 957 (9th Cir. 2002) (opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Plaintiff argues Dr. Tran's opinion does not constitute substantial evidence because it was based on an "incomplete review of the record."  Opening Brief, at 9.  It is not the consultive examiner's review of records, however, that renders the opinion substantial evidence.  The Court also notes that the records to which Plaintiff points did not exist at the time of Dr. Tran's examination.

The Court therefore finds that even though one reason was incorrect, the ALJ's rejection of Dr. Chauhan's opinion in favor of that of Dr. Tran was supported by substantial evidence and was free of legal error.

B.     Plaintiff's Credibility

Plaintiff next argues that the ALJ erred in rejecting his subjective complaints.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Plaintiff contends that the ALJ's credibility analysis was "almost nonexistent," and believes that the ALJ based his determination solely "on the faulty belief that 'exaggerated pain behavior' was some indicia of malingering." Opening Brief, at 13.

A review of his decision, however, reveals numerous reasons for his finding that Plaintiff was not fully credible. First, the ALJ noted inconsistencies between Plaintiff's testimony at the hearing and his prior statements. For example, although Plaintiff testified that he could only walk 30 feet at a time, he indicated in his December 2006 Exertional Activities Questionnaire that once or twice a week, he is able to walk a full block round trip. AR 16. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (ALJ may rely on inconsistent statements in finding a claimant less than fully credible).

The ALJ next found that Plaintiff's credibility was diminished because of a "marginal work history with only seven years of full substantial gainful activity in the past fifteen years, or in his entire lifetime." AR 17. Indeed, Plaintiff was 33 years old on the alleged onset of disability date and received a high school diploma. As the ALJ calculated, this gave him 15 years to work prior to his alleged disability, yet he worked for less than half that time. An ALJ

1  may consider a claimant's work history as part of the credibility analysis. _Thomas v. Barnhart,_
2  _278 F.3d 947, 959 (9th Cir. 2002)._

3       The ALJ also cited Plaintiff's exaggerated pain behavior in questioning his credibility.
4  AR 17.  As documented throughout the record, Plaintiff's description of his pain did not
5  correspond to the objective evidence.  Amplification of symptoms can constitute substantial
6  evidence supporting the rejection of a subjective complaint of severity of symptoms. _Matthews_
7  _v. Shalala_, 10 F.3d 678, 680 (9th Cir.1993); _Lambert v. Astrue_, 2010 WL 1339050, *15 (E.D.
8  Cal. 2010) (ALJ correctly cited consultive examiner's finding of "painful behavior" in
9  questioning claimant's credibility); _Carson v. Astrue_, 2008 WL 2148784 (W.D.Wash. 2008)
10 (ALJ properly relied on exaggerated pain behaviors in credibility analysis).

11      As he did in contesting the ALJ's treatment of the medical evidence, Plaintiff argues that
12 the ALJ misinterpreted his "exaggerated pain behavior" for malingering.  Evidence of
13 malingering, however, is sufficient on its own to discredit a claimant's testimony. _Benton v._
14 _Barnhart_, 331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ did not make a finding of malingering
15 and merely cited the documented exaggeration as one factor in discrediting Plaintiff's testimony.
16 _Tonapetyan v. Halter_, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ properly cited claimant's
17 tendency to exaggerate as one factor in the credibility analysis).

18      Insofar as Plaintiff argues that his exaggerated pain behavior is not intentional, the
19 distinction does not render the ALJ's questioning of this subjective element improper. _Lambert_
20 _v. Astrue_, 2010 WL 1339050, *15 (E.D. Cal. 2010) (ALJ correctly cited consultive examiner's
21 finding of "painful behavior" in questioning claimant's credibility); _Carson v. Astrue_, 2008 WL
22 2148784 (W.D.Wash. 2008) (ALJ properly relied on exaggerated pain behaviors in credibility
23 analysis).

24      Finally, the ALJ cited inconsistent medical evidence. _Morgan v. Comm'r Soc. Sec._,
25 169 F.3d 595, 600 (9th Cir. 1999).  Specifically, the ALJ cited numerous "inconsistencies in
26 measurements." AR 17.  For example, in June 2006, Plaintiff told Dr. Chauhan that he had pain
27 on the right side of his lower back with radiation to the right posterior thigh.  Straight leg raising
28 was negative on the right, however, and positive on the left. AR 17, 336-341.  Similarly, in

1   March 2007, Plaintiff reported pain in his right side, though Dr. Chauhan found that the left leg

2   was weaker because of back pain.  AR 17, 316-320.  In Dr. Chauhan's May 17, 2007, report,

3   straight leg raising on the left was now negative and was positive on the right.  The pain was also

4   noted to be on the right, though the left leg was again noted as weaker due to back pain.  AR 17,

5   310-314.  One day later, on March 18, 2007, Dr. Brandt found that leg strength was equal

6   bilaterally and straight leg raising was positive bilaterally.  AR 18.

7       The ALJ further explained that when Plaintiff saw Dr. Sundaresan on March 5, 2007, he

8   reported that his pain was more on the left and had been for two years prior to first being seen in

9   2006.  AR 17, 200-201.  The ALJ noted that this was different than what Plaintiff repeatedly told

10  Dr. Chauhan, beginning in June 2006.  AR 17.

11      As his last example of inconsistent medical evidence, the ALJ explained the

12  discrepancies in Plaintiff's back flexion measurements.  AR 18-19.  Dr. Chauhan measured his

13  back flexion at a range of 90 percent of normal to 50 percent of normal.  However, when Plaintiff

14  was examined by Dr. Feinberg on October 8, 2007, back flexion was substantially less at 25

15  percent or less of normal.  AR 18-19.  Indeed, when Plaintiff saw Dr. Chauhan just over 20 days

16  later, on October 30, 2007, his back flexion was 50 percent of normal.  AR 296.  Three months

17  prior to Dr. Feinberg's examination, Dr. Chauhan found back flexion to be at 60 percent of

18  normal.  AR 304.

19      The ALJ's credibility finding was sufficient to allow the Court conclude that the ALJ did

20  not arbitrarily discredit his testimony.  _Thomas v. Barnhart,_ 278 F.3d 947, 958 (9th Cir. 2002).

21  Based on the above, the Court concludes that the ALJ's credibility determination was supported

22  by substantial evidence and free of legal error.

23                  **CONCLUSION**

24      Based on the foregoing, the Court finds that the ALJ's decision is supported by

25  substantial evidence in the record as a whole and is based on proper legal standards.

26

27

28

Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Christopher L. Molano.


        IT IS SO ORDERED.

    **Dated:**    **August 17, 2010**                              **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE